REVERSED AND REMANDED.

[Opinion delivered November 3, 1885.]

---

## WILLIAM WATSON v. JOSEPH Y. HARRIS.

### (Case No. 1929)

1. DEFAULT—EFFECT—PRACTICE—DESIGNATION.—Plaintiff sued nine defendants in trespass to try title to recover an undivided 1200 acres out of a tract of 2000, and for partition. In January, 1882, judgment by default was taken against defendants, C and W, and it was adjudged that plaintiff recover of them twelve-twentieths of the land described in his petition. The cause was continued as to the other defendants, and in December, 1882, C and W filed a bill of review praying that the judgment against them be set aside, and they permitted to answer; in July, 1883, W filed an answer purporting to be an amendment of his original answer filed in June, 1882; and on the same date plaintiff filed exceptions and answer to the bill of review. In July, 1885, the cause went to trial between plaintiff and all the defendants, and judgment was rendered for all the defendants except W; as to him, it recited that at a former term judgment by default had been rendered against him, and no legal cause had been shown to set it aside; and it appearing to the court that his interest in the land was 100 acres, setting it forth by metes and bounds, it was ordered that plaintiff recover of him the 160 acres so described, and costs. The land recovered of W was in the east half of the 2000 acres, and the court found that plaintiff had no title to that part of the tract. *Held:*

(1) That allowing C and W, to plead to the action and introduce evidence at the trial, brought them before the court as effectually as if the court had formally set aside the default.

(2) A defendant against whom judgment by default stands, has no right to plead or introduce evidence to defeat the suit; and the action of the court in allowing C and W to appear in the suit, and rendering judgment in favor of C, was treating the judgment by default as set aside.

(3) If the judgment by default against C could be annulled without a formal order, by an act of the court inconsistent with the existence, this occurred when he was permitted to plead in the case, and before the entry of the final judgment. If this set aside the judgment as to C, it set it aside also as to W.

(4) The additional fact that the court held plaintiff had no title to the land claimed by W, yet allowed him to recover from W, made the judgment clearly unjust.

(5) W's claim was not described in the petition, or designated as to quantity or field notes in the answer, or statement of facts, and the court clearly erred in granting a recovery against him as to any specific tract.

APPEAL from Rusk. Tried below before the Hon. J. G. Hazlewood. The opinion states the case.

J. H. Wood, for appellant, on the failure of the petition to specify the land, cited: Hall & Jones v. Jackson, 3 Tex., 305; Brown v. Harless, 22 Tex., 645; Wallace & Co. v. Bogel & Bros., 62 Tex., 636. As to the effect of the judgment by default, he cited: Hughes v. Lane, 6 Tex., 291; Johnson v. Davis, 7 Tex., 176; Kinney v. Vinso 32 Tex., 127.

G. H. Gould, for appellee, cited: R. S. art. 4803; Welch v. Holmes, Austin Term, 1882, published in Law Rep., vol. 1, No. 6; Mason v. Slevin, 1st White and Wilson, sec. 11, and authorities there cited.

WILLIE, CHIEF JUSTICE.—The record discloses substantially the following state of case, so far as the appellant Watson is concerned.

The appellee sued him in connection with eight other defendants in an action of trespass to try title, to recover an undivided 1200 acres, out of a tract of 2000, and to have a partition made between the plaintiff and the defendants according to their respective interests in the land. On the 9th of January, 1882, a judgment by default was taken against Watson and one of his co-defendants, Cull Carr, and it was adjudged that the appellee recover of them twelve-twentieths of the land described in his petition, and that the commissioners there-after to be appointed, partition the land between plaintiff and said defendants, in that proportion, and that the cause be continued as to the other defendants. On the 16th of January, 1882, Cull Carr and wife filed a motion to set aside this judgment by default; and on the 23d of December, 1882, Cull Carr and Watson filed a bill of review, praying that the judgment might be set aside, and they permitted

to answer. On the 2d of July, 1883, Watson filed an answer, purporting to be an amendment of his original answer filed June 2, 1882, consisting of a general demurrer and pleas of not guilty and of the statute of limitations. On the same day the plaintiff filed exceptions and answer to Carr and Watson's bill of review.

At the July term, 1885, of the District Court of Rusk county, the case went to trial between the plaintiff and all the defendants, including Carr and Watson. The plaintiff having introduced evidence to sustain his side of the cause, Carr and Watson, together with the other defendants, produced testimony to defeat the plaintiff's action as to them. The court rendered judgment in favor of all the defendants except Watson; and as to him, it recited that at a former term of the court a judgment by default had been rendered for his interest in the land sued for. It then stated that it further appearing to the court that Watson's interest in the land was one hundred acres, setting it forth by metes and bounds, it was considered that the plaintiff recover of him the 100 acres thus described, and all costs, and have his writ of possession.

It seems from the record that the land recovered of Watson was in the east half of the Stephen C. George league; and the court, in its conclusions of law and fact, found that the plaintiff had no title to that half of the league. The court further found, however, that judgment by default having been taken as to Watson at a former term of the court, and no legal cause having been shown to set aside the default, the plaintiff should recover as to him.

Watson moved to set aside this judgment and for a new trial, which motion having been overruled, this appeal was taken and is prosecuted.

The counsel for Watson signs the statement of facts in company with the attorneys for the other parties interested in the suit.

It is apparent from this statement of the case, that whilst no formal order appears to have been entered, setting aside the judgment by default either as to Carr or Watson, they were each allowed to plead to the action. Not only so, but they were also allowed to introduce testimony to defeat the plaintiff's recovery. They were as much before the court upon the hearing of the cause as any of the other defendants; as much, in fact, as if the court had formally set aside the default, and allowed them to plead and introduce evidence. The court did, in fact, give them special permission to plead; for their amended answers state that they were filed by leave of the court, and upon these answers, containing this statement, they were allowed to go to trial, and to introduce evidence to sustain their pleadings. A defendant against whom a judgment by default stands, has no right to

plead in the cause, or to introduce evidence to defeat the plaintiff's action. The court too treated its action in this respect as equivalent to a setting aside of the default; for it rendered a judgment against the plaintiff in favor of Carr, without any formal order annulling the judgment by default, which had been taken against him. It could not render a judgment in his favor with one standing against him at the same time in the same cause. If the judgment by default against Carr could be annulled without a formal order, by an act of the court inconsistant with its existence, this occurred, as we have seen, long before the entry of the final judgment, by admitting him to plead in the cause. If this set aside the judgment as to Carr, it set it aside also as to Watson; and we cannot see how the court gave judgment for the former and against the latter, when they both stood in the same attitude before it as to the judgment by default already rendered. What other object could the court have had in allowing the defendants, Carr and Watson, to plead and prove their case, unless it was to ascertain whether or not a judgment should be rendered in their favor? If it was a foregone conclusion that judgment was to stand against either of them as given by default, then the idle ceremony of filing an answer and introducing proof, should not have been imposed upon that particular defendant. But the record shows that this was precisely what was required of Watson; for, although he had a plea of not guilty in the case, and the plaintiff had wholly failed to prove title to the land claimed by Watson, yet the court rendered judgment against the latter. on the sole ground that the plaintiff had previously obtained against him an interlocutory judgment by default.

Not only so, but it rendered judgment against him for 100 acres of land, describing it by metes and bounds, when there was nothing in the record which authorized a recovery of that specific tract from Watson. Watson's claim was not described in the petition; it was not designated as to quantity, or field notes, either in his answer or the statement of facts. He purports to make an exhibit of his deed as a part of his answer, and the record shows that it was received in evidence, but it is nowhere set out, or any statement of it given by which it can be told what amount or description of land was claimed by him. The court therefore clearly erred in granting a recovery as to any specified tract of land against him.

And we think, taking the entire record into consideration, that the court should not have rendered any final judgment whatever against Watson. The final judgment rendered can only be supported upon the theory that the interlocutory judgment was in force at the time of its entry. The existence of the interlocutory judgment was incon-

sistent with the fact that Watson subsequently pleaded and produced proof in the cause. We think the court treated it as set aside in allowing Watson and Carr to appear in the suit, and by rendering judgment in favor of Carr. When we add to these considerations the fact that by the action of the court, a plaintiff, who the court held had no title to the land claimed by Watson, has been allowed to recover it from him, the injustice of allowing the judgment to stand is apparent. We think the court should have set aside the judgment rendered against the appellant and granted him a new trial; and for the error in refusing so to do, the judgment will, in this particular, be reversed and the cause remanded for a new trial, as between the appellant and the appellee; the rights of the other defendants under the judgment to be thereby in no wise interfered with or impaired.

REVERSED AND REMANDED.

[Opinion delivered November 27, 1885.]